BRENTON D. ADAMS, Trustee of Brenton D. Adams, Retirement Plan, Plaintiff v. BANK UNITED OF TEXAS FSB, H. TERRY HUTCHENS, M. A. MANSOUR, AND WIFE, TAGHRID D. MANSOUR, ROBERT T. HEDRICK, WILLIAM M. GRIGGS, Defendants

No. COA03-1423

(Filed 21 December 2004)

1. Pleadings— Rule 11 motion—burden of proof

The trial court did not erroneously place the burden of proof and persuasion on the party against whom a motion for Rule 11 sanctions had been filed (the plaintiff in this case). Once the moveant establishes a prima facie case, as here, the burden shifts to the nonmovant.

2. Pleadings— Rule 11—quantum of proof

The preponderance of the evidence standard should be used in determining whether a Rule 11 sanction has occurred. This is the standard applicable to civil cases in North Carolina unless a change is made by the General Assembly, which has not happened here.

3. Pleadings— Rule 11 sanctions—unsuccessful underlying claim

For Rule 11 purposes, a decision that a plaintiff contesting a bankruptcy had been properly served with notice does not mean that his claim was inappropriate or unreasonable.

4. Pleadings— Rule 11 sanctions—reasonable inquiry

The trial court erroneously imposed Rule 11 sanctions against plaintiff for failing to conduct a reasonable inquiry into the law where plaintiff, who was contesting a foreclosure, presented plausible legal theories regarding notice of the foreclosure and service by publication.

**5. Pleadings— Rule 11 sanctions—findings**

The trial court erred by imposing Rule 11 sanctions without findings about the facts available to plaintiff when his complaint was filed or the kind of factual inquiry he made before filing the complaint. The case is remanded for consideration of plaintiff's conduct in investigating the case, as well as his continued prosecution of the case after discovering certain information (which may involve the improper purpose prong of Rule 11 analysis).

**6. Appeal and Error— motion to modify record on appeal— denied—consideration on remand**

Defendants' motion to modify the appellate record to include an affidavit was denied in an appeal from the imposition of sanctions against plaintiff. There is no indication that the affidavit was part of the trial court record; however, as the case is remanded on other grounds, the trial court may consider the issue.

Appeal by plaintiff from an order entered 26 June 2003 by Judge A. Leon Stanback in Wake County Superior Court. Heard in the Court of Appeals 24 August 2004.

*Wyrick Robbins Yates & Ponton, LLP, by K. Edward Greene and Kathleen A. Naggs for plaintiff-appellant.*

*Robert T. Hedrick for defendants-appellees M. A. Mansour, Taghrid D. Mansour, Robert T. Hedrick and William M. Griggs.*

HUNTER, Judge.

Plaintiff, Brenton D. Adams ("Adams"), presents the following four issues for our consideration: Whether the trial court erroneously (1) placed the burden of proof upon Adams, the nonmovant, by requiring Adams to prove his compliance with the requirements of N.C. Gen. Stat. § 1A-1, Rule 11; (2) utilized a preponderance of the evidence quantum of proof instead of a clear and convincing evidence quantum of proof; (3) imposed Rule 11 sanctions against Adams for failing to conduct a reasonable inquiry into the law and the facts regarding the claims set out in the complaint or bringing a claim not well grounded in fact and in law; and (4) sanctioned Adams for continued prosecution of this claim. After careful review, we reverse the trial court's order and remand for further proceedings.

The pertinent facts tend to indicate that Adams is the trustee of the Brenton D. Adams Retirement Plan which claimed ownership to

real property foreclosed upon by defendant, Bank United of Texas F.S.B. ("Bank"). Defendant Terry Hutchens ("Hutchens") was an attorney and a substitute trustee employed by the Bank to institute the foreclosure proceedings. After the Bank submitted the highest bid at the foreclosure sale on 15 July 1998, Defendants M. A. Mansour and his wife ("the Mansours") submitted a successful upset bid and ownership was transferred to the Mansours pursuant to a trustee's deed. To borrow the purchase price, the Mansours executed a deed of trust to defendant Robert Hedrick ("Hedrick"), as the trustee and grantee, and William Griggs ("Griggs") as the beneficiary.

On 3 January 2000, Adams filed a complaint against defendants seeking to have the foreclosure proceeding declared null and void, the Trustee's Deed and the Deed of Trust stricken, and to require the parties to execute a quitclaim deed on the property. In February 2001, summary judgment was entered in favor of defendants. This Court upheld the entry of summary judgment in a 4 June 2002 unpublished opinion. *See Adams v. Bank United of Tx. FSB*, 150 N.C. App. 713, 564 S.E.2d 320 (2002) (COA01-773) (unpublished).

Thereafter, the Mansours, Hedrick and Griggs moved for Rule 11 sanctions. Based upon their allegations that Adams received sufficient and adequate notice of the foreclosure proceedings, these defendants contended Adams' complaint was not well grounded in fact; was not warranted by existing law, nor by a good faith argument for the extension, modification or reversal of existing law; and was interposed for an improper purpose. Upon consideration of the motion, the trial court found Adams was properly served with notice and that Adams provided in discovery copies of three return receipts from certified mail sent by defendants. Therefore, the trial court concluded Adams' complaint was not well grounded in law and fact and that he did not conduct a reasonable inquiry into the law and facts prior to filing the complaint. Accordingly, the trial court ordered Adams, individually and as trustee, to pay $15,147.00 in attorney's fees and $296.75 in costs. From this order, Adams appeals.

According to Rule 11, the signer certifies that three distinct things are true: the pleading is (1) well grounded in fact; (2) warranted by existing law, "or a good faith argument for the extension, modification, or reversal of existing law" (legal sufficiency); and (3) not interposed for any improper purpose. A breach of the certification as to any one of these three prongs is a violation of the Rule.

*Bryson v. Sullivan*, 330 N.C. 644, 655, 412 S.E.2d 327, 332 (1992). In this case, although the Mansours, Hedrick, and Griggs moved for Rule 11 sanctions based upon an alleged violation of all three prongs, the trial court concluded Adams had only violated the legal and factual sufficiency prongs. Thus, any allegations that Adams violated Rule 11 because he had an improper purpose in filing his complaint were not ruled upon by the trial court and are not before us.[1]

### A.  Burden of Proof

[1] Adams first contends the trial court committed reversible error by placing the burdens of proof and persuasion on Adams. Specifically, Adams argues that "[w]here the issue of sanctions is raised by a motion, as it was in this case, the movant has the burdens of proof and persuasion to show a Rule 11 violation." As the parties do not contest that the burden of proof and persuasion is upon the movant, we only review whether the burden was erroneously placed upon Adams in this case.

In the order imposing Rule 11 sanctions against Adams, the trial court stated in its conclusions of law:

1. That Plaintiff was properly served and had sufficient and adequate legal notice of the foreclosure proceeding.

2. That the Plaintiff, both individually as an attorney at law, and as Trustee, by signing the complaint violated Rule 11.

3. That the Plaintiff in his capacity as attorney and Trustee failed to conduct a reasonable inquiry into the law and the facts regarding the claims set out in the complaint.

4. That it has been established that there was sufficient compliance with the statutory requirements for service of notice of foreclosure.

5. That the Plaintiff in his capacity as attorney and Trustee failed to demonstrate that the claims set out in the complaint were well-grounded in fact and in law.

Adams argues the phrase "failed to demonstrate" in Conclusion of Law 5 indicates the burden of proof was erroneously placed upon Adams. We disagree.

---

1. Although the movants alleged Adams had violated all three prongs of Rule 11, the trial court based its order of sanctions upon the first two prongs of Rule 11 only. The trial court did not make any findings of fact or conclusions of law regarding whether Adams violated the improper purpose prong of Rule 11.

When read in the context of the remaining conclusions of law, we conclude Conclusion of Law 5 does not indicate the burden of proof and persuasion was placed upon Adams. Indeed, in conclusions of law 1-4, the trial court determined Adams was properly served, had sufficient legal notice and had failed to conduct a reasonable inquiry into the law and facts. The trial court also concluded defendants had complied with the statutory requirements for service of notice of foreclosure. After making these conclusions, the trial court then stated Adams "failed to demonstrate that the claims set out in the complaint were well-grounded in fact and in law." As explained in *Bannon v. Joyce Beverages, Inc.*, 113 F.R.D. 669, 674 (N.D. Il. 1987), once the movant establishes a *prima facie* case, the burden shifts to the nonmovant to put forth evidence indicating Rule 11 was not violated.[2]

### B. Quantum of Proof

[2] Adams also argues the trial court erroneously utilized a preponderance of the evidence quantum of proof. Adams contends the movant should be required to prove a Rule 11 violation by a clear and convincing evidence quantum of proof. First, our Supreme Court has indicated that "the standard under . . . Rule 11(a) is one of objective reasonableness under the circumstances." *Turner*, 325 N.C. at 164, 381 S.E.2d at 713. However, our review of the case law, and as Adams indicates in his brief, the North Carolina appellate cases are silent as to whether North Carolina applies a preponderance of the evidence standard or a clear and convincing evidence standard in determining whether an attorney's conduct was objectively reasonable under the circumstances.[3] As this is an issue of first impression before North Carolina's appellate courts, we look to the purpose behind Rule 11 for guidance.

> [T]he central purpose of Rule 11 is to deter baseless filings . . . , [and to] streamline the administration and procedure of [our] courts. . . . Rule 11 imposes a duty on attorneys to certify that they have conducted a reasonable inquiry and have determined that

---

2. As explained in *Turner v. Duke University*, 325 N.C. 152, 164, 381 S.E.2d 706, 713 (1989) (citation omitted), "[t]he North Carolina Rules of Civil Procedure are, for the most part, verbatim recitations of the federal rules. Decisions under the federal rules are thus pertinent for guidance and enlightenment in developing the philosophy of the North Carolina rules."

3. Furthermore, our research has not revealed any cases from the federal circuits or other states holding a preponderance of the evidence or clear and convincing evidence standard applies in the Rule 11 context.

any papers filed with the court are well grounded in fact, legally tenable, and "not interposed for any improper purpose." An attorney who signs the paper without such a substantiated belief "shall" be penalized by "an appropriate sanction."

*Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393, 110 L. Ed. 2d 359, 374 (1990). However, "the rule is not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories." Rule 11 of Title 28, Federal Rules of Civil Procedure, 1983 Amendment Advisory Committee Notes. "Although the Rule must be read in light of concerns that it will spawn satellite litigation and chill vigorous advocacy, . . . , any interpretation must give effect to the Rule's central goal of deterrence." *Cooter*, 496 U.S. at 393, 110 L. Ed. 2d at 374.

> Rule 11 sanctions have significant impact beyond the merits of the individual case. Concerns for the effect on both an attorney's reputation and for the vigor and creativity of advocacy by other members of the bar necessarily require that [appellate courts] exercise less than total deference to the [trial] court in its decision to impose Rule 11 sanctions. . . . "Despite the increased license to impose sanctions, judges should always seriously reflect upon the nuances of the particular case, and the implications the case has on the nature of the legal representation, before imposing sanctions."

*In re Ronco, Inc.*, 838 F.2d 212, 217-18 (7th Cir. 1988) (citation omitted). As explained in *F.D.I.C. v. Tefken Const. and Installation Co.*, 847 F.2d 440, 444 (7th Cir. 1988):

> While the Rule 11 sanction serves an important purpose, it is a tool that must be used with utmost care and caution. Even where, as here, the monetary penalty is low, a Rule 11 violation carries intangible costs for the punished lawyer or firm. A lawyer's reputation for integrity, thoroughness and competence is his or her bread and butter. We may not impugn that reputation without carefully analyzing the legal and factual sufficiency of the arguments.

Thus, in deciding a Rule 11 motion, "many courts weigh the evidence in a manner suggesting the practical application of a higher, clear-and-convincing standard. . . ." Gregory Joseph, *Sanctions: The Federal Law of Litigation Abuse* § 17(A)(5)(b), at 321 (3d ed. 2000 & Supp. 2004).

ADAMS v. BANK UNITED OF TEXAS FSB

[167 N.C. App. 395 (2004)]

However, in North Carolina, "[i]n the superior court, except in extraordinary cases, the burden of proof is by the greater weight of the evidence." *In re Thomas,* 281 N.C. 598, 603, 189 S.E.2d 245, 248 (1972). In the context of attorney disbarment by a judge or judicial censure or removal, our Supreme Court has determined these proceedings warrant a clear and convincing evidence quantum of proof. In *In re Nowell,* 293 N.C. 235, 247, 237 S.E.2d 246, 254 (1977), our Supreme Court had to determine the appropriate quantum of proof applicable in a proceeding where a judge faced the serious consequences of censure or removal. In its holding, our Supreme Court "declare[d] the quantum of proof in proceedings before the Judicial Standards Commission of this State to be proof by clear and convincing evidence . . . ." *Id.* Similarly, in *In re Palmer,* 296 N.C. 638, 647-48, 252 S.E.2d 784, 789-90 (1979), our Supreme Court adopted the clear and convincing rule as the quantum of proof in proceedings where an attorney faced disbarment in a judicial proceeding.[4] In explaining its rationale, our Supreme Court referenced the following discussion by the Supreme Court of New Jersey:

> " 'Because of the dire consequences which may flow from an adverse finding . . . , we regard as necessary to sustain such a finding the production of a greater *quantum* of proof than is ordinarily required in a civil action, *i.e.,* a preponderance of the evidence, but less than that called for to sustain a criminal conviction, *i.e.,* proof of guilt beyond a reasonable doubt. Although the specific rule has not been articulated previously in [the State of New Jersey], we declare it to be that discipline or disbarment is warranted only where the evidence of unethical conduct or unfitness to continue in practice against an attorney is clear and convincing. . . .' "

*Palmer,* 296 N.C. at 648, 252 S.E.2d at 790 (quoting *In re Pennica,* 177 A.2d 721, 730 (N.J. 1962)).

However, in North Carolina, a preponderance of the evidence quantum of proof applies in civil cases unless a different standard has been adopted by our General Assembly or approved by our Supreme Court. *See In re Thomas,* 281 N.C. at 603, 189 S.E.2d at 248; N.C. Gen. Stat. § 7B-805 (2003) (indicating allegations in a petition alleging abuse, neglect, or dependency shall be proved by clear and convinc-

---

4. The clear, cogent and convincing evidence quantum of proof has also been adopted by the North Carolina State Bar, with the approval of the Supreme Court of North Carolina, for attorney disciplinary hearings before the bar. *See* R. N.C. St. B. B.0114(u) (2004) Ann. R. (N.C.) 399, 444; N.C. Gen. Stat. § 84-21 (2003).

ing evidence). In those instances where a different standard has been adopted by case law, it was pursuant to an opinion by our Supreme Court. A different standard for Rule 11 motions has not been adopted and we have found no instances where this Court has imposed a different standard on its own. Therefore, while there may be valid and plausible reasons for adopting a clear, cogent and convincing evidence standard for determining Rule 11 sanctions, we adhere to the general rule that a preponderance of the evidence quantum of proof governs in civil cases unless changed by our General Assembly or Supreme Court. *See In re Thomas*, 281 N.C. at 603, 189 S.E.2d at 248. Thus, we conclude the preponderance of the evidence quantum of proof should be utilized in determining whether a Rule 11 violation has occurred. In light of this conclusion, we do not reach whether Rule 11 sanctions rise to the level of the dire consequences of disbarment and censure.

## C. Imposition of Sanctions

**[3]** Adams argues the trial court erroneously concluded he violated the mandates of N.C. Gen. Stat. § 1A-1, Rule 11(a). As stated:

> According to Rule 11, the signer certifies that three distinct things are true: the pleading is (1) well grounded in fact; (2) warranted by existing law, "or a good faith argument for the extension, modification, or reversal of existing law" (legal sufficiency); and (3) not interposed for any improper purpose. A breach of the certification as to any one of these three prongs is a violation of the Rule.

*Bryson*, 330 N.C. at 655, 412 S.E.2d at 332. In the order imposing sanctions in this case, the trial court concluded Adams' complaint was not well grounded in fact or in law.

> The trial court's decision to impose or not to impose mandatory sanctions under N.C.G.S. § 1A-1, Rule 11(a) is reviewable *de novo* as a legal issue. In the *de novo* review, the appellate court will determine (1) whether the trial court's conclusions of law support its judgment or determination, (2) whether the trial court's conclusions of law are supported by its findings of fact, and (3) whether the findings of fact are supported by a sufficiency of the evidence. If the appellate court makes these three determinations in the affirmative, it must uphold the trial court's decision to impose or deny the imposition of mandatory sanctions under N.C.G.S. § 1A-1, Rule 11(a).

*Turner*, 325 N.C. at 165, 381 S.E.2d at 714.

**ADAMS v. BANK UNITED OF TEXAS FSB**

[167 N.C. App. 395 (2004)]

Adams contends the trial court erroneously concluded his complaint was not warranted by existing law or a good faith argument for the extension or modification of existing law.

> To determine whether a pleading is legally sufficient, the trial court should look "first to the facial plausibility of the pleading and only then, if the pleading is implausible under existing law, to the issue of 'whether to the best of the signer's knowledge, information, and belief formed after reasonable inquiry, the complaint was warranted by the existing law.'"

*Golds v. Central Express, Inc.*, 142 N.C. App. 664, 668, 544 S.E.2d 23, 27 (citation omitted), *disc. review denied,* 353 N.C. 725, 550 S.E.2d 775 (2001). "[R]eference should be made to the document itself, and the reasonableness of the belief that it is warranted by existing law should be judged as of the time the document was signed. Responsive pleadings are not to be considered." *Bryson,* 330 N.C. at 656, 412 S.E.2d at 333. Moreover, our Supreme Court has stated:

> [W]e hold that subsequently filed documents cannot impose a duty on counsel or a party under the legal sufficiency prong of the Rule to seek dismissal. However, once responsive pleadings or other papers are filed and the case has become meritless, failure to dismiss or further prosecution of the action may result in sanctions either under the improper purpose prong of the Rule, or under other rules, or pursuant to the inherent power of the court.

*Id.* at 658, 412 S.E.2d at 334. Furthermore, " '[c]ase law clearly supports the fact that just because a plaintiff is eventually unsuccessful in her claim, does not mean the claim was inappropriate or unreasonable.'" *Johnson v. Harris,* 149 N.C. App. 928, 937, 563 S.E.2d 224, 229 (2002) (citation omitted). Thus, this Court's decision in *Adams v. Bank United of Tx. FSB,* 150 N.C. App. 713, 564 S.E.2d 320, that plaintiff was properly served does not mean the claim was inappropriate or unreasonable.

Adams argues his complaint presented a facially plausible legal theory because (1) Hutchens failed to comply with the requirements of N.C. Gen. Stat. § 45-21.16(a), (2) Hutchens failed to file an affidavit with the clerk showing the circumstances warranting the use of service by posting and publication which is required by Rule 4(j1) and N.C. Gen. Stat. § 45-21.16(a), and (3) there was no justifiable basis for service of process by publication or by posting a notice on the property.

### (1) Noncompliance with N.C. Gen. Stat. 45-21.16(a)

**[4]** In this case, Adams alleges he was the owner of the property foreclosed upon by Hutchens and, therefore, Hutchens was required to serve Adams with notice of the foreclosure proceedings pursuant to N.C. Gen. Stat. § 45-21.16(a). N.C. Gen. Stat. § 45-21.16(a) (2003) states in pertinent part:

> After the notice of hearing is filed, the notice of hearing shall be served upon each party entitled to notice under this section. . . . The notice shall be served and proof of service shall be made in any manner provided by the Rules of Civil Procedure for service of summons, including service by registered mail or certified mail, return receipt requested. . . . In the event that the service is obtained by posting, an affidavit shall be filed with the clerk of court showing the circumstances warranting the use of service by posting.

In his complaint, Adams made the following relevant allegations:

> 19. That the Plaintiff, neither personally, or as Trustee of the Brenton D. Adams Retirement Plan ever received actual or constructive notice of the foreclosure proceeding referred to above, until sometime in 1999. The Plaintiff, Brenton D. Adams, never received actual or constructive notice of the purported foreclosure sale, never received actual or constructive notice of any hearing required by N.C.G.S. § 45-21.16 and was unaware of the purported foreclosure proceedings until long after a deed had been recorded in the name of the Defendant <u>M. A. Mansour</u>.
>
> . . .
>
> 22. That neither a Notice of the Foreclosure Hearing nor a Notice of the purported Sale of the real estate described above was served upon the Plaintiff in the manner specified in N.C.G.S. 45-21.16. Neither were these items served in any manner required by the Rules of Civil Procedure for service of Summons; and, the Plaintiff had neither actual nor constructive notice of the foreclosure proceedings or of the purported sale of real estate until long after a deed had been recorded in the name of the defendant Mansour.
>
> 23. That the Plaintiff never received actual or constructive service on delivery of any registered mail, certified mail, sheriff's service or any other manner of service whatsoever.

ADAMS v. BANK UNITED OF TEXAS FSB

[167 N.C. App. 395 (2004)]

24. That the file of the foreclosure proceeding referred to above, contained special proceeding number 98 SP 714 on file of the office of the Clerk of Superior Court of Wake County does not show a purported service upon the Plaintiff and does not contain proof of service upon the Plaintiff in any manner whatsoever as is required in N.C.G.S. 45-21.16 and by the Rules of Civil Procedure and by basic Constitutional due process requirements.

. . .

26. That there was no justifiable basis for service of process by publication or by posting a notice on the property described herein. Upon information and belief there was no service of process upon the Plaintiff by means of publication or posting; and, even if there had been such purported service, the facts of this case do not give rise to the posting or publishing of such notice and, if such notice was ever given, it is invalid as a matter of law.

A defect in service is sufficient to permit the foreclosure proceedings to be attacked in an independent action. *See Hassell v. Wilson*, 301 N.C. 307, 315, 272 S.E.2d 77, 82-83 (1980). However, if a property owner receives actual notice of the foreclosure hearing and could have taken advantage of the relief provided in N.C. Gen. Stat. § 45-21.34, assuming he had grounds, or he could have objected to the method of service, the property owner cannot later argue service on him was inadequate. *Fleet National Bank v. Raleigh Oaks Joint Venture*, 117 N.C. App. 387, 390, 451 S.E.2d 325, 328 (1994). Thus, Adams' allegations that defendants failed to comply with the requirements of N.C. Gen. Stat. § 45-21.16(a) and that he did not receive notice of the foreclosure proceedings presents a plausible legal theory.

Defendants argue, however, that Adams was given notice via certified mail and that Adams' personal file contained three original green receipts for certified articles which he disclosed to defendants in discovery. As such, Adams had actual notice of the foreclosure proceedings. These arguments, however, relate to whether a pleading is well grounded in fact (factual sufficiency), and not the legal sufficiency. When determining the legal sufficiency of a pleading, the focus is upon whether the legal theory is plausible under existing law or a good faith argument for a change in law. *See* N.C. Gen. Stat. § 1A-1, Rule 11(a); *see also Bryson v. Sullivan*, 102 N.C. App. 1, 12, 401 S.E.2d 645, 653-54 (1991), *aff'd in relevant part*

*and reversed on other grounds*, 330 N.C. 644, 412 S.E.2d 327 (1992) (indicating that when the legal sufficiency prong of Rule 11 is implicated, if the paper does not present a plausible legal theory, the trial court must then scrutinize the attorney's conduct in researching the law). Whether the facts of a particular case support a plausible legal theory is not part of the legal sufficiency analysis. Rather, it is part of the factual sufficiency analysis, which is discussed *infra*.

### (2) Failure to File an Affidavit

Adams also contends his allegations that defendants failed to file an affidavit providing justification for service by publication or posting as required by N.C. Gen. Stat. § 1A-1, Rule 4(j1) (2003) presented a plausible legal theory. Rule 4(j1) states in pertinent part:

> A party that cannot with due diligence be served by personal delivery, registered or certified mail, or by a designated delivery service pursuant to 26 U.S.C. § 7502(f)(2) may be served by publication. . . . Upon completion of such service there shall be filed with the court an affidavit showing the publication and the mailing in accordance with the requirements of G.S. 1-75.10(2), the circumstances warranting the use of service by publication, and information, if any, regarding the location of the party served.

As explained by this Court, "in order to utilize service of process by publication under this statute it is necessary that plaintiff file with the court an affidavit showing the 'circumstances warranting the use of service by publication.' " *Edwards v. Edwards*, 13 N.C. App. 166, 169, 185 S.E.2d 20, 22 (1971). Thus, in *Edwards*, this Court set aside the judgment entered because the plaintiff failed to file the affidavit showing the circumstances warranting the use of service by publication. *Id.* at 170, 185 S.E.2d at 22.

In this case, Adams alleged in his complaint that the court file "does not contain proof of service upon the Plaintiff in any manner whatsoever as is required in NCGS § 45-21.16 and by the Rules of Civil Procedure" and "[t]hat there was no justifiable basis for service of process by publication or by posting a notice on the property described herein." Adams further alleges upon information and belief that "the facts of this case do not give rise to the posting or publishing of such notice and, if such notice was ever given, it is invalid as a matter of law." Thus, Adams' allegations that the requirements for service by publication were not met in this case present a plausible legal theory.

(3) No Justifiable Basis for Service of Process by Publication
or by Posting a Notice on the Property

N.C. Gen. Stat. § 45-21.16(a) allows for service by posting upon the property in those instances when service by publication is allowed. Service by publication is governed by N.C. Gen. Stat. § 1A-1, Rule 4(j1), which states in pertinent part: "A party that cannot with due diligence be served by personal delivery, registered or certified mail, or by a designated delivery service authorized pursuant to 26 U.S.C. § 7502(f)(2) may be served by publication." As explained in *Fountain v. Patrick*, 44 N.C. App. 584, 586, 261 S.E.2d 514, 516 (1980), "[a] defect in service of process by publication is jurisdictional, rendering any judgment or order obtained thereby void."

In his complaint Adams alleges that the "facts of this case do not give rise to the posting or publishing of such notice and, if such notice was ever given, it is invalid as a matter of law." Adams' complaint lists numerous ways in which Adams' contact information for purposes of service of process was readily available to defendants. Thus, Adams presented a plausible legal theory that service by publication was not justified in this case, even though this Court later held service was sufficient.

Accordingly, we conclude Adams' complaint was legally sufficient. As such, the trial court erroneously imposed Rule 11 sanctions for failing to conduct a reasonable inquiry into the law.

### D. Factual Sufficiency

[5] Next, Adams contends the trial court erroneously concluded his complaint was not well grounded in fact. "In analyzing whether the complaint meets the factual certification requirement, the court must make the following determinations: (1) whether the plaintiff undertook a reasonable inquiry into the facts and (2) whether the plaintiff, after reviewing the results of his inquiry, reasonably believed that his position was well grounded in fact." *McClerin v. R-M Industries, Inc.*, 118 N.C. App. 640, 644, 456 S.E.2d 352, 355 (1995). " '[I]n determining compliance with Rule 11, "courts should avoid hindsight and resolve all doubts in favor of the signer." ' " *Twaddell v. Anderson*, 136 N.C. App. 56, 70, 523 S.E.2d 710, 720 (1999) (citations omitted).

In the order imposing sanctions, the trial court made the following relevant findings of fact and conclusions of law:

## FINDINGS OF FACT

. . .

2. That the evidence presented in this cause indicates that the Plaintiff was properly served with notice of the foreclosure proceeding.

3. That there was proper posting of notice on the property by the Sheriff of Wake County; that further notice of said foreclosure proceeding was sent to the office of Brenton D. Adams by certified mail and was in fact received.

4. That notice of the foreclosure was mailed to the Plaintiff by first class mail; that notice was properly published in a newspaper with general circulation in the county; and that notice of fourteen upset bids was sent by first class mail to the Plaintiff at his office.

5. That the action of the Plaintiff was dismissed on motion by the Defendants for summary judgment on February 21, 2001.

6. That the Plaintiff in discovery provided evidence of his receipt of certified mail sent by the Trustee in foreclosure of notice of the foreclosure action by sending to Defendants copies of three return receipts were contained in his files.

. . .

## CONCLUSIONS OF LAW

1. That Plaintiff was properly served and had sufficient and adequate legal notice of the foreclosure proceeding.

. . .

3. That the Plaintiff in his capacity as attorney and Trustee failed to conduct a reasonable inquiry into the law and the facts regarding the claims set out in the complaint.

Adams first argues the order for sanctions should be reversed because the trial court failed to make any findings of fact regarding the facts available to Adams when the complaint was filed or what kind of factual inquiry Adams made before filing the complaint. We agree.

In *Davis v. Wrenn*, 121 N.C. App. 156, 464 S.E.2d 708 (1995), *cert. denied*, 343 N.C. 305, 471 S.E.2d 69 (1996), this Court reversed

an order for Rule 11 sanctions because the findings of fact failed to indicate how the attorney's conduct violated the mandates of Rule 11(a). *See Davis*, 121 N.C. App. at 160, 464 S.E.2d at 711. In this case, the trial court made several findings indicating several different methods of service in this case were proper and that summary judgment was entered in favor of defendants. However, the findings of fact neither address what information was known to Adams at the time the complaint was filed nor discuss the reasonableness of the steps Adams undertook or failed to undertake in investigating the facts of this case.

Adams argues he reviewed the foreclosure file to determine whether proof of valid service on him was contained in the file and Adams also states that he never received notice of the foreclosure proceedings from Hutchens. Defendants argue, however, that the copies of the three return receipts for certified articles provided by Adams in discovery and the fact that the court file contained the affidavit required by Rule 4(j1) of the Rules of Civil Procedure indicate Adams had knowledge at the time the complaint was filed that service was proper. Therefore, defendants argue Adams' complaint was not well grounded in fact.

(1) Copies of Return Receipts for Certified Mail

In discovery, Adams provided copies of three unsigned domestic return receipts for certified mail. Specifically, these unsigned return receipts stated:

| Article Number | Article Addressed To | Service Type |
|---|---|---|
| P 968 048 539 | Brenton D. Adams, Trustee of the Brenton D. Adams Retirement Plan, P.O. Box 1389 Dunn, N.C. 28335 | Certified |
| P 968 048 541 | Richard E. Barr, P.O. Box 1389 Dunn, N.C. 28335 | Certified |
| P 968 048 542 | Spouse of Richard E. Barr, P.O. Box 1389 Dunn, N.C. 28335 | Certified |

The return receipts were neither dated nor signed. In the order imposing sanctions, the trial court found "the Plaintiff in discovery provided evidence of his receipt of certified mail sent by the Trustee in foreclosure of notice of the foreclosure action by sending to Defendants copies of three return receipts were [sic] contained in his files." The trial court, however, did not find that Adams had knowledge of these return receipts at the time he filed the complaint or that a reasonable investigation would have disclosed these return receipts. As indicated by this Court in *Bryson v. Sullivan,* attorneys should be sanctioned for failure to take minimal steps to confirm facts when the facts could be verified easily by reference to public records or accessible documents. *Bryson,* 102 N.C. App. at 10, 401 S.E.2d at 652. However, as stated, " 'in determining compliance with Rule 11, "courts should avoid hindsight." ' " *Twaddell,* 136 N.C. App. at 70, 523 S.E.2d at 720 (citations omitted). Thus, the finding of fact that these return receipts were provided to defendants in discovery does not support the conclusion that Adams failed to undertake a reasonable inquiry into the facts. Therefore, the trial court must consider Adams' conduct in investigating the facts of this case and determine whether the investigation was reasonable or that a reasonable investigation would have revealed facts to Adams tending to indicate his position was not well grounded in fact. Moreover, the continued prosecution after the discovery of the certified mail return receipts may implicate the improper purpose prong of Rule 11. *See generally Bryson,* 330 N.C. at 658, 412 S.E.2d at 334. Accordingly, we remand this cause to the trial court for further proceedings to determine whether Adams' complaint was well grounded in fact or was brought for an improper purpose.

### (2) Court file

[6] Adams contends he reviewed the court file and did not find any evidence establishing Hutchens had served Adams via certified mail. He contends the court file did not contain any return receipts for any certified articles addressed to Adams. Also, during oral argument, Adams argued the court file did not contain an affidavit providing the basis for service by publication or posting. However, defendants made an oral motion at oral argument of this case to supplement the record on appeal to include the affidavit. After oral argument, defendants filed a written motion to include the affidavit in the record on appeal. Defendants argued that a few days before oral argument they reviewed the court file and found the required affidavit with a date stamp of 24 June 1998 in the court file. Thus, defendants argue this

ADAMS v. BANK UNITED OF TEXAS FSB

[167 N.C. App. 395 (2004)]

affidavit demonstrates Adams' allegations that service by publication or posting was improper were not well grounded in fact.

N.C.R. App. P. 9(b)(5) states in pertinent part: "On motion of any party or on its own initiative, the appellate court may order additional portions of a trial court record or transcript sent up and added to the record on appeal." There is no indication in the trial court's order imposing sanctions or in the record on appeal that this affidavit was part of the trial court record. Thus, we deny defendants' motion to supplement the record on appeal. However, as this case must be remanded for further proceedings, the trial court may consider whether this affidavit was in the court file at the time Adams filed his complaint and its relevance to whether a violation of Rule 11 occurred.

In sum, we conclude the burdens of proof and persuasion were not improperly placed upon Adams in this case. We also conclude the trial court properly utilized a preponderance of evidence quantum of proof. However, the trial court erroneously concluded Adams' complaint was not legally sufficient. Thus, we reverse that portion of the sanctions award. The trial court also did not render appropriate findings of fact to support its conclusions of law that Adams' complaint was not well grounded in fact. Moreover, the trial court did not address the movants' allegations that Adams brought the complaint for an improper purpose. Accordingly, we reverse the trial court's order imposing sanctions and remand for further proceedings to determine whether Adams' complaint was well grounded in fact or brought for an improper purpose.

Reversed and remanded for further proceedings.

Judges TIMMONS-GOODSON and McCULLOUGH concur.